IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Norfolk Division

| | | |
|---|---|---|
| SEAWARD SERVICES, INC. | ) | |
|     Plaintiff, | ) | |
| | ) | |
|     v. | ) | Civil Action No. 2:21CV131 (RCY) |
| | ) | |
| THE UNITED STATES OF AMERICA, | ) | |
|     Defendant. | ) | |
| | ) | |

**MEMORANDUM OPINION**

This matter is before the Court on Defendant's Motion to Dismiss (ECF No. 33), filed pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6). The motion has been fully briefed, and the Court dispenses with oral argument because the facts and legal contentions are adequately presented in the materials before the Court, and oral argument would not aid in the decisional process. E.D. Va. Loc. Civ. R. 7(J). For the reasons stated below, the Court will grant Defendant's Motion to Dismiss (ECF No. 33).

**I. FACTUAL ALLEGATIONS**

The United States ("Defendant"), acting through the United Naval Supply Systems Command, contracted with Great Eastern Group, Inc. ("GEG") to provide certain services to four training vessels ("the Vessels"). (Compl. ¶ 8, ECF No. 1.) On April 9, 2018, GEG entered into a subcontracting agreement with Seaward Services, Inc. ("Plaintiff" or "Seaward") to provide certain crew and services to the Vessels. (*Id.* ¶ 9.) Defendant approved of the selection of Seaward. (*Id.* ¶ 11.)

Seaward provided the services due under the subcontracting agreement; however, GEG failed to provide payment to Seaward. (*Id.* ¶¶ 12-13.) On November 18, 2019, Seaward notified Defendant that Seaward had not been paid for past services and was continuing to provide services for which it was not being paid. (*Id.* ¶ 14.) Seaward received no payments or assurances

1

of future payment, and, on November 25, 2019, Seaward issued a Notice of Intent to Stop Work due to Nonpayment to Defendant. (*Id.* ¶¶ 15-16.) Seaward alleges that as a result of nonpayment, it has a maritime lien against the Vessels for the outstanding balance. (*Id.* ¶ 23.)

## II. PROCEDURAL HISTORY

Plaintiff filed its Complaint on October 8, 2020, in the United States District Court for the Middle District of Florida. (ECF No. 1.)  Defendant filed a Motion to Dismiss, or in the Alternative, Motion to Transfer Venue on December 21, 2020. (ECF No. 10.)   The United States District Court for the Middle District of Florida issued an Order on March 11, 2021, denying the Motion to Dismiss and granting the Motion to Transfer. (ECF No. 25.)  The action was transferred from the Middle District of Florida to the Eastern District of Virginia and was assigned to the undersigned.  (ECF No. 27.)

Defendant filed a Motion to Dismiss and a Memorandum in Support of said motion on March 25, 2021. (ECF Nos. 33-34.)  Plaintiff filed a Memorandum in Opposition on April 8, 2021. (ECF No. 38.)  Plaintiff filed its Reply on April 14, 2021. (ECF No. 39.)

## III. LEGAL STANDARD

"When analyzing a motion to dismiss for lack of subject matter jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(1), the court must consider 'whether plaintiff's allegations, standing alone and taken as true [plead] jurisdiction and a meritorious cause of action.'" *Allianz Ins. Co. v. Cho Yang Shipping Co., Ltd.*, 131 F. Supp. 2d 787, 789 (E.D. Va. 2000) (quoting *Dickey v. Greene*, 729 F.2d 957, 958 (4th Cir. 1984)).  The burden of establishing the existence of subject matter jurisdiction rests with the party asserting jurisdiction. *See Richmond, Fredericksburg & Potomac R.R. Co. v. United States*, 945 F.2d 765, 768 (4th Cir. 1991).

"A motion to dismiss under Rule 12(b)(6) tests the sufficiency of a complaint; importantly, it does not resolve contests surrounding the facts, the merits of a claim, or the applicability of

defenses." *Republican Party of N.C. v. Martin*, 980 F.2d 943, 952 (4th Cir. 1992) (citing 5A Charles A. Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1356 (1990)). Dismissals under Rule 12(b)(6) are generally disfavored by the courts because of their res judicata effect. *Fayetteville Invs. v. Com. Builders, Inc.*, 936 F.2d 1462, 1471 (4th Cir. 1991). Federal Rule of Civil Procedure 8 only requires that a complaint set forth "'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). While the complaint's "[f]actual allegations must be enough to raise a right to relief above the speculative level," "detailed factual allegations" are not required in order to satisfy the pleading requirement of Federal Rule 8(a)(2). *Id.* (citations omitted). "[A] motion to dismiss for failure to state a claim should not be granted unless it appears certain that the plaintiff can prove no set of facts which would support its claim and would entitle it to relief." *Mylan Labs., Inc. v. Matkari*, 7 F.3d 1130, 1134 (4th Cir. 1993). The plaintiff's well-pleaded allegations are assumed to be true, and the complaint is viewed in the light most favorable to the plaintiff. *Id.* (citations omitted); *see also Martin*, 980 F.2d at 952.

## IV. DISCUSSION

The dispute between the parties can be summarized in one question: can maritime liens be fixed on public vessels? (Mem. Supp. at 1, ECF No. 34; Mem. Opp'n at 2, ECF No. 38; Reply at 1, ECF No. 39.) Defendant contends that the Maritime and Commercial Instruments Lien Act ("MCILA") prohibits fixing maritime liens on public vessels. (Mem. Supp. at 4-6.) Plaintiff argues that the MCILA only prohibits *in rem* actions on public vessels, while the Suits in Admiralty Act ("SAA") and Public Vessels Act ("PVA") permit *in personam* actions on public vessels. (Mem. Opp'n at 2, 4.) Plaintiff claims that this action is an *in personam* claim, so it is

3

not barred by the MCILA. (*Id.* at 3.)  Defendant argues that the *in personam* or *in rem* distinction is immaterial, since neither the SAA or the PVA create a cause of action. (Reply at 2.)  Further, Defendant argues that while the MCILA does create a cause of action, that cause of action is not available for actions against public vessels. (*Id.*)

The jurisprudential landscape of this issue is unique.  Only one circuit court, the Eleventh Circuit, has opined on the issue, finding that the MCILA does not prohibit *in personam* actions against public vessels. *Bonanni Ship Supply, Inc. v. United States*, 959 F.2d 1558, 1564 (11th Cir. 1992) (allowing suits "where an admiralty plaintiff sues the United States *in personam* on principles of *in rem* liability").  But the overwhelming majority of district courts, including district courts within the Fourth Circuit, have held that the MCILA prohibits any action, *in personam* or *in rem*, against public vessels. *See Hopeman Bros. v. USNS Concord*, 898 F. Supp. 338 (E.D. Va. 1995); *Sipco Servs. & Marine v. Bethlehem Steel Corp.*, 892 F. Supp. 129, 129 (D. Md. 1995) (describing *Bonanni* as "entirely unsound").

To fully understand the issue, it is necessary to discuss the framework of maritime law established by the SAA, PVA, and the MCILA.  The SAA waives sovereign immunity and allows actions against the United States.  It states:

> In a case in which, if a vessel were privately owned or operated, or if cargo were privately owned or possessed, or if a private person or property were involved, a civil action in admiralty could be maintained, a civil action in admiralty *in personam* may be brought against the United States or a federally-owned corporation. In a civil action in admiralty brought by the United States or a federally-owned corporation, an admiralty claim *in personam* may be filed or a setoff claimed against the United States or corporation.

46 U.S.C. § 30903.  The SAA prohibits public vessels from being arrested or seized, which acts as a prohibition on *in rem* actions against the United States. *See* 46 U.S.C. § 30908.  The PVA also contains a waiver of immunity, stating that "[a] civil action *in personam* in admiralty may be brought, or an impleader filed, against the United States for – (1) damages caused by a public

4

vessel of the United States; or (2) compensation for towage and salvage services, including contract salvage, rendered to a public vessel of the United States." 46 U.S.C. § 31102.  The SAA and PVA overlap and, when a suit seemingly could be filed under either, the PVA controls. *See United States v. United States Continental Tuna Corp.*, 425 U.S. 164, 180-81 (1976).  The MCILA directly addresses maritime liens, and it states:

> (a) Except as provided in subsection (b) of this section, a person providing necessaries to a vessel on the order of the owner or a person authorized by the owner—
>     (1) has a maritime lien on the vessel;
>     (2) may bring a civil action in rem to enforce the lien; and
>     (3) is not required to allege or prove in the action that credit was given to the vessel.
> (b) This section does not apply to a public vessel.

46 U.S.C. § 31342.

The only Circuit Court of Appeals opinion that opines on whether the MCILA prohibits *in personam* actions against the United States is *Bonanni Ship Supply, Inc. v. United States*. 959 F.2d 1558.  The *Bonanni* court acknowledged that "the MCILA on its face appears to preclude the imposition of a maritime lien on a public vessel . . . ." *Id.* at 1562.  However, the court held that the MCILA did not prohibit *in personam* actions based on *in rem* principles. *Id.* at 1564.  As a result, it concluded that the MCILA "does not preclude the imposition of maritime liens against a public vessel." *Id.* at 1563.  The court's reasoning was that the legislative history of the MCILA shows that Congress was not intending to change the state of maritime law. *Id.* at 1562.  However, the court's view of pre-MCILA maritime law differed from that of Congress.[1]  Since the Eleventh Circuit previously had upheld *in personam* actions on maritime liens fixed to public vessels and since Congress did not intend to change existing maritime law, the Eleventh Circuit

---

[1] *Bonanni* notes that the "preexisting law" on which it bases its opinion actually occurred after Congress enacted the MCILA. 959 F.2d at 1564 n.11.

held that the MCILA does not prohibit actions against the United States *in personam* on *in rem* principles. *Id.* at 1563-64.

However, the *Bonanni* ruling hardly renders the issue settled in the Eleventh Circuit. The *Bonanni* court expressed reservations about its own ruling, noting "[g]iven the clear desire of Congress to exempt public vessels from coverage under the maritime lien provisions of the MCILA . . . en banc [review] may be in order." *Id.* at 1564 n.11. The Eleventh Circuit reiterated this position in *Turecamo of Savannah v. United States*, finding that "[the court] is bound to follow the precedent set in *Bonanni* . . . [h]owever . . . reconsideration of the holding in *Bonanni*, might be appropriate for en banc review by this court." 36 F.3d 1083, 1084 (11th Cir. 1994);[2] *see*

---

[2] The *Turecamo* court provided five separate justifications supporting en banc review of the rule from *Bonanni*:

> 1. As explained *supra*, the portion of section 31342's legislative history stating that the maritime lien provision "makes no substantive change in the law" was written at a time that the provision did not expressly exclude public vessels. *See* H.R.Rep. No. 918, 100th Cong., 2d Sess. 7, at 8 (1988). It does not appear that this was pointed out to the panel deciding *Bonanni*. Perhaps the panel would have reached a different result had the Government in that case educated the court on the timing of that statement in the enactment of the statute.
>
> 2. Although generally the MCILA was aimed at codifying existing maritime law, Congress stated that the Act also made a great many substantive changes. *See* H.R.Rep. No. 918, 100th Cong., 2d Sess. 7, *reprinted in* 1988 U.S.C.C.A.N. 6104, 6108-09 ("The Committee wants to make it clear, however, that the bill as reported does in fact make a great many substantive changes to the present law…. The Committee intends and hopes that the interpretation of the laws as codified and enacted by this bill will be based on the language off [sic] the bill itself…. There is no mandate in logic or case laws for reliance on legislative history to reach a result contrary to the plain meaning of the statute, particularly where that plain meaning is in no way unreasonable.")
>
> 3. The legislative history behind the 1989 amendment emphasizes Congress' intent that "a claim may not be brought either in personam or in rem on a maritime lien theory against a public vessel." *See* 135 CONG.REC. 9312 (daily ed. Nov. 21, 1989).
>
> 4. Because Congress has expressly stated its intent, it is inappropriate to second-guess Congress' view of existing law. *See Brown v. General Servs. Admin.*, 425 U.S. 820, 828, 96 S. Ct. 1961, 1966, 48 L. Ed. 2d 402 (1976) ("Whether that understanding of Congress was in some ultimate sense incorrect is not what is important…. For the relevant inquiry is not whether Congress correctly perceived the then state of the law, but rather what its perception of the state of the law was."). Also, assuming Congress did incorrectly interpret the state of the existing law, such interpretation was not unreasonable. As the *Bonanni* panel acknowledged, *Stevens Technical* and *Marine Coatings* were both decided after the 1988 Act and the 1989 amendment. At the time Congress enacted the MCILA, *Canadian Aviator v. United States*, 324 U.S. 215, 65 S. Ct. 639, 89 L. Ed. 901 (1945) (which involved a tort claim for negligence), was the only decision casting doubt on the perception of Congress. In addition, one year before Congress enacted the MCILA, a district court had stated that "46 U.S.C. § 788 [of the Public Vessels Act] forbids liens against

*Thorn's Diesel Serv. v. Houston Ship Repair*, 233 F. Supp. 2d 1332, 1346-48 (M.D. Ala. 2002) (noting that *Turecamo* "explicitly called on the court to reconsider the *Bonanni* holding en banc").

District courts around the country, with the exception of those in the Eleventh Circuit, have been uniform in their plain text interpretation of the MCILA and have found that it prohibits liens on public vessels. *See, e.g., Pactherm, Inc. v. United States*, No. 92-5022 & No. 93-0990, 1994 WL 327334, at *3 (N.D. Cal. June 13, 1994) (holding that the MCILA specifically precludes actions against public vessels); *E.J. Bartells Co. v. Nw. Marine*, 1994 A.M.C. 1057, 1057 (W.D. Wash. 1994) (holding that the MCILA does not permit a maritime lien action against a public vessel); *I.T.O. Corp. v. United States*, 1990 A.M.C. 1439, 1439 (S.D. Tex. 1990) (finding that the MCILA does not permit liens on public vessels).

District courts within the Fourth Circuit have also been uniform in their interpretation of the MCILA as prohibiting maritime lien actions against public vessels. In *Hopeman Bros. v. USNS Concord*, the Court found that the MCILA does not allow maritime liens to be placed on public vessels. 898 F. Supp. at 340. The Court found that the MCILA "could not be more unambiguous." *Id.* Both the plain language of the statute and the intent of Congress clearly show that the statute prohibits bringing a claim based on a maritime lien theory against a public vessel. *Id.* In *Sipco Services & Marine, Inc. v. Bethlehem Steel Corp.*, the District Court for the District of Maryland came to the same conclusion. 892 F. Supp. at 129. The court noted that *Bonanni*

---

public vessels." *River & Offshore Servs. Co. v. United States*, 651 F. Supp. 276, 281 (E.D. La. 1987). Therefore, one can see how Congress could have misinterpreted the existing law.

5. Even if Congress misinterpreted the existing law, Congress has now made it clear that a claim may not be brought on a maritime lien theory against a public vessel. *See* 135 CONG.REC. 9312 (daily ed. Nov. 21, 1989); *see also* 135 CONG.REC. 9183 (daily ed. Nov. 20, 1989); 135 CONG.REC. 9184 (daily ed. Nov. 20, 1989).

36 F.3d at 1087-88.

was "entirely unsound," and the court held that the fixing of a maritime lien on a public vessel is prohibited by statute. *Id.*

This Court agrees with the holding of *Hopeman Bros*. As noted in several of the cases discussed herein, the language of the MCILA and the intent of Congress clearly prohibit maritime lien actions, whether *in rem* or *in personam*, against public vessels. When "the words of a statute are unambiguous, the judicial inquiry is complete." *Babb v. Wilkie*, 140 S. Ct. 1168, 1177 (2020) (quoting *Desert Palace, Inc. v. Costa*, 539 U.S. 90, 98 (2003) (internal quotation marks omitted)). The plain meaning of the MCILA could not be clearer: "[the] section does not apply to a public vessel." 46 U.S.C. § 31342(b).

Even if the Court were to find ambiguity where none exists, the legislative history illustrates the clear intent of Congress to prohibit such actions. First, Congress expressly instructed courts to use the plain meaning of the statute. The House Report accompanying the bill states:

> The Committee intends and hopes that the interpretation of the laws as codified and enacted by this bill *will be based on the language [of] the bill itself . . . the literal language of the statute should control the disposition of the cases.* There is no mandate in logic or case laws for reliance on legislative history *to reach a result contrary to the plain meaning of the statute*, particularly where that plain meaning is in no way unreasonable.

H.R. Rep. No. 100-918, at 15-16 (1988), *as reprinted in 1998 U.S.C.C.A.N.* 6104, 6108-09 (emphasis added). Second, the legislative history itself clearly supports an interpretation of the MCILA that prohibits these actions. Representative Davis stated that the MCILA was intended to "clarify once and for all the fact that a claim may not be brought either *in [personam]* or *in rem* on a maritime lien theory against a public vessel." 135 Cong. Rec. H30,358 (daily ed. Nov. 20, 1989) (statement of Rep. Davis). Additionally, Representative Tauzin stated, "[the MCILA] simply makes more explicit the long-established rule of law prohibiting maritime liens against public vessels." 135 Cong. Rec. H30,803 (daily ed. Nov. 21, 1989) (statement of Rep. Tauzin).

8

Neither the plain language nor the legislative history support allowing the type of action that Plaintiff has asserted. The Court holds that the MCILA prohibits actions, whether *in rem* or *in personam*, based on a maritime lien theory against a public vessel. Since the fixing of maritime liens on public vessels is prohibited by statute, there is no cause of action to serve as a basis for federal maritime jurisdiction or for a claim upon which relief may be granted. *See Sipco Servs. & Marine*, 892 F. Supp. at 129 (dismissing a MCILA claim against a public vessel on 12(b)(1) and 12(b)(6) grounds); *see also Hurd v. United States*, 134 F. Supp. 2d 745, 766 (D.S.C. 2001) (noting that federal district courts have jurisdiction over cases with admiralty or maritime causes of action). Therefore, the Court will grant the Defendant's Motion to Dismiss, pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6), and the action will be dismissed with prejudice.

## V. CONCLUSION

For the reasons detailed above, the Court will grant Defendant's Motion to Dismiss (ECF No. 33).

An appropriate Order shall issue.

/s/
Roderick C. Young
United States District Judge

Richmond, Virginia
Date: February 7, 2022